**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

NATHAN DEMPSEY                                                                                          PLAINTIFF

V.                                               1:14CV00008-JJV

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff, Nathan Dempsey, appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for supplemental security income ("SSI") benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.    BACKGROUND**

On May 4, 2011, Mr. Dempsey protectively filed for DIB and SSI benefits due to stage 3 congestive heart failure, atrial fib, severe migraines, and ADHD. (Tr. 143) His claims were denied initially and upon reconsideration. At Mr. Dempsey's request, an Administrative Law Judge ("ALJ") held a hearing on June 21, 2012, where Mr. Dempsey appeared with his lawyer. (Tr. 26) At the hearing, the ALJ heard testimony from Mr. Dempsey and a vocational expert ("VE"). (Tr. 27-46)

The ALJ issued a decision on July 27, 2012, finding that Mr. Dempsey was not disabled under the Act. (Tr. 11-20) The Appeals Council denied Mr. Dempsey's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Mr. Dempsey, who was thirty-one years old at the time of the hearing, has a high school

education. (Tr. 34) He has past relevant work experience as a chemical environmental specialist, building maintenance helper, welder, and livestock loader/herder. (Tr. 31-32)

## II.   DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Mr. Dempsey had not engaged in substantial gainful activity since April 25, 2011, and he had the following severe impairments: atrial fibrillation status post ablations, idiopathic cardiomyopathy, congestive heart failure, migraines, obstructive sleep apnea, and adjustment disorder. (Tr. 13) However, the ALJ found that Mr. Dempsey did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 14)

According to the ALJ, Mr. Dempsey has the residual functional capacity ("RFC") to do sedentary work, except that he could push and/or pull ten pounds occasionally and less than ten pounds frequently. The ALJ noted that he is "able mentally to understand, remember, and carry out detailed but not complex instructions; make judgments in simple, work-related situations up to managing time, resources, and materials; and is able to respond appropriately to coworkers, supervisors, and minor changes in the usual work routine. (Tr. 16) The VE testified that the jobs available with these limitations were payroll clerk, insurance clerk, and billing and posting clerk. (Tr. 44-45)

---

[1]The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

[2]20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

After considering the VE's testimony, the ALJ determined that Mr. Dempsey could perform a significant number of other jobs existing in the national economy, and found that Mr. Dempsey was not disabled.

## III. ANALYSIS

### A. Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision.[3] Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."[4]

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion."[5]

### B. Mr. Dempsey's Arguments for Reversal

Mr. Dempsey asserts the Commissioner's decision should be reversed because it is not supported by substantial evidence. Specifically, Mr. Dempsey contends that the opinion is in error because it (1) the Appeals Council failed to consider additional evidence submitted after the ALJ's decision, and (2) substantial evidence supports the finding that he is disabled. (Doc. No. 10)

#### 1. Evidence Submitted to Appeals Counsel

Mr. Dempsey argues that the "Appeals Council should have considered the additional

---

[3] *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).

[4] *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

[5] *Id.* (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

evidence submitted after the ALJ's decision." (*Id.*) According to the Appeals Council's November 19, 2013, letter, it did consider "the additional evidence listed on the enclosed Order of Appeals Council" and determined that Mr. Dempsey's arguments and additional evidence did "not provide a basis for changing" the ALJ's decision. (Tr. 1) Accordingly, this argument is without merit.

        2.    Substantial Evidence Supporting Disability

Mr. Dempsey contends that his treating physician's medical source statement and completed RFC questionnaire provide substantial evidence that he is disabled. He also asserts that these documents should be afforded "substantial weight" because they are based on "better medical evidence and more updated medical evidence than any of the opinions of the consultative examiners and of the medical evidence that the ALJ had when the decision was issued." (Doc. No. 10)

The issue is not whether there was evidence to support Mr. Dempsey's claim of disability, but whether there was substantial evidence to support the ALJ's decision.[6] As set out below, there was substantial evidence to support the ALJ's decision:

      <u>Medications</u>[7] – The ALJ noted that Mr. Dempsey's "medical conditions improve with prescribed treatment . . . ." (Tr. 17) Between April 2011 and August 2011, Mr. Dempsey's ejection fraction went from 20% to 50%. (Tr. 347, 371) In August, the doctor also found "no evidence of significant valvular heart disease." (Tr. 371) During a November 2011 visit, the doctor

---

[6]*Davis v. Apfel*, 239 F.3d 962 (8th Cir. 2001) ("We may not reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently.")

[7]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

noted that Mr. Dempsey is "stable from a cardiovascular standpoint" and that his congestive heart failure "overall seems to be improved with medications." (Tr. 390-391) The doctor also noted that Mr. Dempsey complained of fatigue but the doctor "believe[d] that a lot of [it had] to do with endurance." The doctor recommended "increased activity." (Tr. 391)

Compliance[8] – The ALJ recognized that Mr. Dempsey had not been complying with his doctors' recommendations. For example, Mr. Dempsey was repeatedly advised to lose weight and quit smoking, but he has failed to do either. (Tr. 403) Though he reduced his smoking from three packs a day to two or three cigarettes a day, he was still smoking at the time of the hearing. (Tr. 36, 403) Additionally, he has not complied with his doctors' recommendations to lose weight. In November 2011, he weighed 288 pounds. (Tr. 390) At the May 2012 hearing he was at 289 pounds, and by May 2013 he was up to 308 pounds. (Tr. 37, 433) Notably, both smoking and obesity directly affect Mr. Dempsey's impairments.

Daily Activities[9] -- The ALJ noted that Mr. Dempsey "cares for three children, prepares meals, performs household chores, drives, shops, and manages his own finances." (Tr. 15) These types of activities, along with the other evidence in the record, were properly considered by the ALJ.

Treating Physician[10] -- Mr. Dempsey argues that his supplemental medical evidence

---

[8]*Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.)."

[9]*Clark v. Chater*, 75 F.3d 414, 417 (8th Cir.1996) (An ALJ weighs the credibility of a claimant's subjective complaints of pain by considering multiple factors, including daily activities, and may discredit complaints if they are "inconsistent with the evidence as a whole.").

[10]*Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (holding that an ALJ may discount or even disregard the opinions of a treating physician, when they are inconsistent or where other

and forms from his treating physician provide substantial evidence that he is disabled. However, the Appeals Council correctly discounted this evidence, because it was not reliable.

On August 20, 2012, Dr. Norris, a cardiologist, submitted an RFC form that opined that Mr. Dempsey was extremely limited in his functional abilities. Not only is the form contrary to the evidence as a whole, it is contrary to Dr. Norris's previous treating opinions. Though it is hard to read, the form appears to say that Mr. Dempsey's congestive heart failure is "worsened by any activity." (Tr. 428) Yet, just ten months earlier Dr. Norris recommended "increased activity" and noted the Mr. Dempsey's cardiac issues were stable. (Tr. 387, 428) Additionally, in August 2011 Mr. Dempsey requested a disability form, but Dr. Norris indicated that he was leaving that issue to his primary care physician.[11] (Tr. 393) Dr. Norris also asserted that Mr. Dempsey could pick up less than ten pounds only occasionally. (Tr. 427) However, at the hearing, Mr. Dempsey testified that he could pick up his thirty-eight-pound child, though it would wear him out. (Tr. 39)

Additionally, though the supplemental records indicated that in May 2013, Mr. Dempsey's ejection fraction was down again, the doctor responded only by increasing his medications and setting a follow-up appointment for three months later. (Tr. 433-434)[12]

## IV.   CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the

---

medical assessments are better supported).

[11]"He has complained of shortness of air and has requested a disability form for this. I have told him I'm not turning him down for the handicap sticker for his car; however, I would prefer that this be evaluated and followed by his primary care team rather than his cardiologist." (Tr. 393)

[12]*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding that an ALJ may rely on the fact that a claimant has undergone only conservative treatment when evaluating the severity of the impairments).

record as a whole to support the Commissioner's decision.

Accordingly, the Commissioner's decision is affirmed and Mr. Dempsey's Complaint is dismissed with prejudice.

IT IS SO ORDERED this 21st day of August, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE